**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 4, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30467

_____

PURJICE BOUDREAUX,

                              Plaintiff - Appellant,

                    versus

SWIFT TRANSPORTATION COMPANY, INC.; ET AL.,

                              Defendants

SWIFT TRANSPORTATION COMPANY, INC.,

                              Defendant - Appellee.

_____

Appeal from the United States District Court
For the Western District of Louisiana

_____

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Purjice Boudreaux filed suit against Swift Transportation
Company seeking damages for injuries arising from a slip and fall
incident. Boudreaux claimed that he slipped after stepping in a
puddle of oil that had been left on a truck stop parking lot by a
Swift truck. The district court granted Swift's motion for summary
judgment. We affirm.

I

Prior to sustaining injuries in the fall, Boudreaux was

employed by Werner Enterprises as a truck driver. During the evening hours of February 10, 2001, Boudreaux entered a Flying J truck stop in Waco, Texas, and parked his eighteen-wheeler beside a tractor-trailer owned and operated by Swift. The trucks remained parked beside each other throughout the night. The next morning, Boudreaux exited his truck and proceeded to the restaurant located in the truck stop to eat breakfast.

Upon leaving the restaurant, he observed the Swift truck departing the parking area. He then walked toward his truck and stepped in a puddle of oil located on the portion of the parking lot where the Swift truck had been parked. Boudreaux stepped out of the puddle of oil and wiped his shoes on the asphalt. He then performed an inspection of his truck, and continued wiping his feet on the asphalt and a small patch of grass in an effort to remove the oil from his shoes. Both the asphalt and the grass were wet due to mist that had been falling throughout the morning.

After inspecting his truck for five to seven minutes, Boudreaux climbed into the truck's cab, sat down on the driver's seat, and picked up a pack of cigarettes. As he was exiting the cab, Boudreaux slipped on one of the truck's steps and fell directly to the ground, landing squarely on his backside. He immediately felt pain in his lower back and left leg. Boudreaux reported his injury to Werner, but mentioned neither the puddle of oil nor the Swift truck. As a result of injuries sustained from the fall, Boudreaux underwent back surgery in July 2001, and has

been unable to return to work as a truck driver for Werner.

Boudreaux filed suit against Swift and Flying J, alleging negligence and premises liability claims. Swift filed a motion for summary judgment which the district court denied in order to allow Boudreaux additional time to seek evidence that the oil puddle had been left by the Swift truck. Boudreaux requested that Swift produce copies of records which would identify the Swift truck that was parked at the Flying J on the morning of February 11, 2001, as well as maintenance and repair records for that truck for the years 2000 and 2001. Swift objected to this request on grounds that it was unduly burdensome, and refused to provide the documents. Boudreaux did not file a motion to compel.

After the discovery deadline passed, Swift filed a motion for reconsideration of its motion for summary judgment. The district court granted this motion, finding that Boudreaux was not entitled to a favorable inference on account of Swift's failure to produce requested documents because Boudreaux had not filed a motion to compel. The court summed up Boudreaux's evidence as follows:

> [P]laintiff's evidence consists solely of his own deposition testimony that: (1) the Swift truck was parked in the Flying J parking lot when plaintiff arrived and was parked there for many hours prior to the alleged accident; (2) the location of the oily substance was directly beneath where the cab of the Swift truck had been parked immediately prior to leaving; and (3) the oil stood on top of the parking surface, covered an area of 6-7 inches and appeared "fresh."

The court then concluded: "As plaintiff has offered nothing more than his own testimony in support of only circumstantial evidence

3

that his alleged accident was caused by an oil spill for which Swift was responsible, plaintiff has failed to show that a genuine issue of material fact exists as to Swift's negligence."

Thirty days after the court entered its ruling granting Swift's motion for summary judgment, Boudreaux filed a notice of appeal. The following day the court granted Flying J's motion for summary judgment, effectively ending the litigation.[1]

## II

### A

We review a grant of summary judgment *de novo*, "applying the same standards the district court used."[2] "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine

---

[1] Although our jurisdiction is uncontested, we are duty-bound to examine it *sua sponte*. *See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). Here, Boudreaux filed his notice of appeal one day before the district court entered a final decision by granting Flying J's motion for summary judgment. This premature notice of appeal would have been sufficient to confer jurisdiction under our circuit's former "doctrine of cumulative finality." *See Alcom Elec. Exch., Inc. v. Burgess*, 849 F.2d 964, 966-69 (5th Cir. 1988); *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1166 (5th Cir. 1984); *Jetco Elec. Indus. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973)). This doctrine has apparently been abrogated by the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, 498 U.S. 269, 274 (1991). *See United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998) (holding that *FirsTier* abrogates the rule announced in the *Jetco-Alcorn-Alcom* line of cases). Cases decided after *FirsTier*, however, have held that a notice of appeal is proper if taken from an order that "would have been appealable if immediately followed by the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b)." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379 (5th Cir. 1996); *see also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631 (5th Cir. 2002). Here, because the district court's order granting Swift's motion for summary judgment "would have been appealable if the district court had certified it pursuant to Rule 54(b), and because the district court did subsequently (and prior to oral argument herein) dispose of all remaining parties and claims," we have jurisdiction over this appeal. *Young*, 295 F.3d at 634 n.2.

[2] *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

4

issue of material fact exists and the movant is entitled to judgment as a matter of law."[3]  "An issue is material if its resolution could affect the outcome of the action."[4]  The party moving for summary judgment must "'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case."[5]

Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[6]  This burden will not be satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[7]  Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[8]  A dispute as to a material fact is "genuine" if the evidence is such that a

---

[3] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c)).

[4] *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[6] *Id.* 1075.

[7] *Id.* (citations and internal quotation marks omitted).

[8] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

reasonable jury could return a verdict for the nonmoving party.[9]

When considering summary judgment evidence, we must view "all facts and inferences . . . in the light most favorable to the nonmoving party."[10] We must "not weigh the evidence or evaluate the credibility of witnesses."[11] "We resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12] We will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts," and will grant summary judgment "in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[13]

B

The parties agree that Texas law applies in this diversity case. Under Texas law, "[t]he elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."[14] Whether a legal duty exists is a threshold question of law in a negligence action,

---

[9] *See Anderson*, 477 U.S. at 251-52.

[10] *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

[11] *Morris*, 144 F.3d at 380.

[12] *Little*, 37 F.3d at 1075 (emphasis omitted).

[13] *Id.* (internal quotation marks and citation omitted).

[14] *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

6

and is to be determined based on the facts surrounding the occurrence in question.[15] Under Texas law, the dominant consideration in determining whether a duty exists is foreseeability of risk.[16] To establish a breach of duty, a plaintiff must show that a defendant either did something an ordinarily prudent person exercising ordinary care would not have done under the circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care.[17] A defendant's negligence will constitute a proximate cause of a plaintiff's injuries when such negligence was the actual cause of the injuries, and the injuries were a foreseeable result of the negligence.[18]

C

Boudreaux contends that the district court erred in finding his summary judgment evidence insufficient to create a genuine fact issue regarding Swift's negligence. In addition, he argues that

---

[15] *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

[16] *Rodriguez v. Sabatino*, 120 F.3d 589, 591-92 (5th Cir. 1997). In *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002), the Texas Supreme Court found that
> [t]he question of legal duty is a multifaceted issue requiring us to balance a number of factors such as the risk and the foreseeability of injury, the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case.

[17] *See Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.–Dallas 2004, pet. denied).

[18] *See Leitch v. Hornsby*, 935 S.W.2d 114, 118-19 (Tex. 1996).

7

the district court improperly weighed his credibility, overlooked Swift's failure to present competent summary judgment evidence showing that it was not negligent, and erroneously placed upon him the burden of compelling discovery from Swift.

1

Boudreaux claims that his summary judgment evidence, which consisted primarily of his own deposition testimony, raised a genuine issue of material fact as to Swift's negligence. Boudreaux testified that when he parked at the Flying J at approximately 5:00 p.m. on February 10, a Swift truck was already parked in the space beside him, that both trucks remained parked beside each other throughout the night, and that the Swift truck left the parking lot only moments before he stepped in the puddle of oil. He noted that the puddle was roughly 7-8 inches in diameter, contained approximately one gallon of oil, and looked "fresh" because it had not yet seeped into the crevices of the asphalt. He stated that after he stepped in the oil, he attempted to remove it from his shoes by wiping them several times on the asphalt and the grass over a five to seven minute period while he inspected his truck. He then climbed into his truck, retrieved a pack of cigarettes, and slipped while stepping down onto one of the truck's grated aluminum steps. Immediately after falling to the ground, Boudreaux alleged that he passed his hand across the bottom of his boots and found them covered with a thin layer of black oil.

Boudreaux also proffered as summary judgment evidence Swift's

8

truck driver manual, which requires its drivers to make pre-trip inspections of their vehicles. Boudreaux alleged that a proper inspection conducted under daylight conditions would have revealed the presence of oil leaking from a truck engine onto the parking lot surface below.

We are persuaded that Boudreaux's evidence fails to create a genuine issue of material fact as to all elements of his negligence claim. Initially, we note that Boudreaux presented some circumstantial evidence indicating that the oil puddle in which he stepped emanated from the Swift truck. Specifically, his testimony that the Swift truck was parked beside his truck throughout the night preceding the accident, and departed only moments before he stepped in an oil puddle located directly below where the cab of the Swift truck had been located, raises a reasonable inference that the oil came from the Swift truck. As evidence that the puddle had been present only a short time before he stepped in it, Boudreaux testified that the oil appeared "fresh," had not yet seeped into the rocks on the asphalt parking lot, and felt like a "smudge" or a "sponge." He described fresh oil as oil that had been present on the parking lot for less than one day.

Taken as true, this evidence creates a fact issue as to whether the oil puddle was created by the Swift truck. However, assuming that the oil was left by the Swift truck, Boudreaux must still point to a duty that has been breached by Swift in order to

9

survive summary judgment.[19]  To this effect, Boudreaux avers that Swift owed him "a duty not to harm him by allowing one of its trucks to leak oil on a parking lot."

Boudreaux's description of Swift's duty sweeps too broadly. The Texas Supreme Court has found that, in a negligence action such as the one at bar, if "reason to anticipate injury is not established, then no duty arises to act to prevent such an unanticipated injury."[20]  Applying this principle, a Texas appellate court found that a truck company and its driver were not liable when a third party slipped on oil that had leaked from a company truck onto a public road.[21]  The court began by noting that the case was not "the usual 'slip and fall' case . . . against an owner-occupier brought by an employee or invitee."[22]  The court then concluded:

> Defendant and its truck driver were under a duty to remove the dangerous condition only if they had reason to anticipate an injury as a foreseeable consequence of

---

[19] *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) ("Duty is the threshold question of any negligence case.  In Texas, moreover, whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question." (citation omitted)); *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001) ("It is fundamental . . . that a legal duty must exist before a defendant is held liable for negligence.").

[20] *Houston Lighting & Power Co. v. Brooks*, 336 S.W.2d 603, 606 (Tex. 1960); *see also Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 590 (Tex. 1986) ("It is a long standing principle in this state that a duty of care arises when conditions are such that a 'prudent person would have anticipated and guarded against the occurrence which caused' another's injury." (quoting *St. Louis S.W. Ry. Co. of Tex. v. Pope*, 86 S.W. 5, 7 (Tex. 1905))).

[21] *Robertson Tank Lines, Inc. v. Radley*, 507 S.W.2d 274, 275 (Tex. Civ. App.–Beaumont 1974, no writ).

[22] *Id.*

10

their failure to remove the dangerous condition [oil that had leaked onto the road]. Without actual or constructive knowledge of the dangerous condition by defendant or its truck driver, the law of this state does not impose a duty to correct the dangerous condition.[23]

We find evidence of actual or constructive knowledge by Swift of the offending oil puddle lacking in this case. In his deposition testimony, Boudreaux stated that he did not know whether the driver of the Swift truck conducted a pre-trip inspection prior to departing the Flying J parking lot on the morning of the accident.[24] Furthermore, Boudreaux alleged in his deposition that Swift was at fault because its driver *failed* to conduct a pre-trip inspection. In short, Boudreaux presented no evidence that the driver of the Swift truck had actual knowledge of the oil puddle.

Finding no evidence of actual knowledge, we must ascertain whether Boudreaux proffered evidence raising a material fact issue as to whether the driver of the Swift truck had constructive knowledge of the oil puddle. A party will be deemed to have constructive knowledge of a fact if the party would have known the fact through the exercise of reasonable care.[25] As evidence of a

---

[23] *Id.*

[24] In response to a question asking if he knew whether the driver of the Swift truck conducted a pre-trip inspection on the morning of the accident, Boudreaux responded, "I never seen the guy."

[25] *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927-28 (Tex. App.–Fort Worth 1994, writ denied); *cf. Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) (in premises liability context, owner or occupier of premises is deemed to have constructive knowledge of premises defect or dangerous condition when a reasonably careful inspection would have revealed it).

11

duty to inspect for oil leaks, Boudreaux points to the Swift truck driver manual, which requires Swift drivers to conduct pre-trip inspections after being off-duty for eight or more consecutive hours.[26] As part of the inspection, Swift drivers are directed to conduct a "vehicle overview" which includes checking for "leaks."

We decline to impute constructive knowledge of the oil puddle to Swift based solely upon its own internal operating procedure requiring pre-trip inspections. Under Texas law, a company's self-imposed policy with regard to inspection, taken alone, does not establish the standard of care that a reasonably prudent operator would follow.[27] In addition, Boudreaux presented no evidence of the actual procedure followed by Swift drivers when conducting pre-trip inspections, much less whether the procedure is designed to detect relatively small "puddles" of seven to eight inches in diameter.[28] In short, we can find no basis in Boudreaux's evidence for concluding that the driver of the Swift truck would have located

---

[26] The evidence here indicates that the Swift driver was off-duty from at least 5:00 p.m. on February 10 until the morning of February 11.

[27] *See Fenley v. Hospice in the Pines*, 4 S.W.3d 476, 481 (Tex. App.–Beaumont 1999, pet. denied) (cited for this proposition in *FFE Transp. Servs., Inc. v. Fulgham*, 48 Tex. Sup. Ct. J. 267, 2004 WL 3019223, at *8 (Tex. Dec. 31, 2004)).

[28] Boudreaux testified at his deposition that, when conducting inspections of his own truck he could see if oil were leaking from his engine. In addition, he testified that when inspecting his tires, he could see the surface below the engine adequately to check for potential oil puddles. This evidence does not directly speak to the manner in which Swift drivers conduct pre-trip inspections of their vehicles.

12

the oil puddle in the exercise of reasonable care.[29]

Even assuming that the driver of the Swift truck had a duty to conduct a pre-trip inspection, the record contains no evidence as to precisely when such an inspection must occur. Given that Boudreaux testified that the oil puddle appeared "fresh" and was only seven to eight inches in diameter, it is plausible that the oil was dropped *after* an inspection should have taken place. Thus, it is unclear whether the puddle existed at the time such an inspection would have occurred.[30]

Because Boudreaux failed to present more than a scintilla of evidence showing that the driver of the Swift truck had actual or constructive knowledge of the oil puddle, a reasonable jury could not find in his favor. Therefore, the district court's grant of summary judgment in favor of Swift was proper.

2

---

[29] The Swift manual indicates that a pre-trip inspection is a "D.O.T. requirement." Our review of the relevant regulations, however, indicates that inspecting for oil leaks and puddles is not part of the inspection procedure required by the Department of Transportation. *See* 49 C.F.R. § 392.7 (2003) (providing that no commercial vehicle may be driven unless the driver is satisfied that the following parts are in good working order: service brakes and trailer brake connections; hand brake; steering mechanism; lighting devices and reflectors; tires; horn; windshield wipers; rear-vision mirrors; and coupling devices).

[30] In his deposition testimony, Boudreaux indicated that there was no way of knowing exactly how old the oil puddle was when he stepped in it:

Q. [Mr. Remondet] Can you tell me if [the Swift truck] dropped oil on the asphalt ten minutes before you walked on it?

A. [Mr. Boudreaux] That I don't know.

Q. Twenty minutes?

A. I don't know.

13

In addition to challenging the district court's finding that his evidence was insufficient to survive summary judgment, Boudreaux contends that the court improperly weighed his credibility as a witness instead of accepting his deposition testimony as true for purposes of summary judgment. While the district court did make reference to the fact that Boudreaux's case was supported by nothing more than "his own testimony" in its memorandum order granting Swift's motion for summary judgment, the court rested its decision on the weakness of that testimony as evidence, and not the credibility of Boudreaux. Furthermore, even if the district court improperly discounted Boudreaux's testimony based on credibility concerns, we find that Boudreaux's testimony, when taken as true, provides insufficient evidence to raise a genuine fact issue on his negligence claim.[31]

3

Boudreaux also contends that the district court erred in granting Swift's motion for summary judgment because Swift, as the moving party, failed to present evidence affirmatively disproving his contention that it was negligent. This argument misapprehends the moving party's burden on summary judgment. On summary judgment, the moving party is not required to present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden by simply "pointing to an absence of

---

[31] *See Breaux v. Dilsaver*, 254 F.3d 533, 538 (5th Cir. 2001) ("[T]his court may decide a case on any ground that was presented to the trial court . . . .").

14

evidence to support the nonmoving party's case."[32]  Swift met this burden by asserting in its motion for summary judgment that Boudreaux could not prove that Swift had breached a duty that it owed to him, and claiming that there "is an absence of evidence to support the claims that Plaintiff is asserting against Swift."

4

Finally, Boudreaux contends that the trial court erroneously placed upon him the burden of filing a motion to compel discovery from Swift, noting that the district court could have acted *sua sponte* to require Swift to produce documents pertaining to the presence of Swift trucks at the Flying J on the morning of February 11, 2001.  We have held that a "district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."[33]  Boudreaux has pointed to no "unusual circumstances" showing that the district court abused its discretion in refusing to order discovery *sua sponte*.  Therefore, we decline his invitation to disturb the district court's discretion in this matter.

---

[32] *Armstrong*, 333 F.3d at 568; *see also Celotex*, 477 U.S. at 323 (finding "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim"); *Morris*, 144 F.3d at 380 ("If . . . the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by . . . pointing out to the district court the absence of evidence necessary to support the nonmoving party's case.").

[33] *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (internal quotation marks and citation omitted).

IV

We find that Boudreaux failed to present evidence sufficient to raise a genuine issue of material fact with respect to his negligence claim against Swift.  Boudreaux's remaining arguments are without merit.

AFFIRMED.