# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 14, 2018

Lyle W. Cayce
Clerk

No. 17-60164

GREEN TREE SERVICING, L.L.C.; WALTER INVESTMENT
MANAGEMENT CORPORATION; BEST INSURORS, INCORPORATED;
MID STATE CAPITAL, L.L.C.; MID STATE TRUST II; MID STATE TRUST
III; MID STATE TRUST IV; MID STATE TRUST V; MID STATE TRUST VI;
MID STATE TRUST VII; MID STATE TRUST VIII; MID STATE TRUST IX;
MID STATE TRUST X; MID STATE TRUST XI; WILMINGTON TRUST
COMPANY; MID-STATE CAPITAL CORPORATION 2004-1 TRUST; MID-
STATE CAPITAL CORPORATION 2005-1 TRUST; MID-STATE CAPITAL
CORPORATION 2006-1 TRUST; MID-STATE CAPITAL TRUST 2010-1,

     Plaintiffs–Appellees,

v.

HENRY HOUSE; LINDA MURRELL,

     Defendants–Appellants.

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN, SOUTHWICK, and WILLETT, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Henry House, Linda Murrell (the House Parties), and other plaintiffs
sued Green Tree Servicing and various other entities (the Green Tree Parties)
in a related action.[1]  The Green Tree Parties initiated the present suit in

---

[1] *Green Tree Servicing, L.L.C. v. Billy Brown*, No. 17-60105.

federal district court seeking to compel arbitration of claims asserted by the House Parties. The district court granted the motion to compel, holding that (1) all of the Green Tree Parties had standing to compel arbitration even though some were not signatories to the arbitration agreement; and (2) the parties had agreed to delegate questions regarding arbitrability to the arbitrator. We affirm.

## I

Henry House purchased a house and surrounding real property from Jim Walter Homes, Inc. and Mid-State Trust IV in 1998. To obtain financing from the sellers, House pledged the real property as collateral. The parties memorialized the transaction by executing a sales contract, promissory note, and deed of trust. The sales contract expressly incorporated four exhibits, including an Arbitration Agreement. The Arbitration Agreement provided:

> The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as in tort or contract, or as a federal or state statutory claim, arising before, during or after performance of this contract, shall be settled by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures administered by J●A●M●S/Endispute, and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.

In 2016, the House Parties and other plaintiffs commenced a lawsuit—*Green Tree Servicing, L.L.C. v. Billy Brown*—in Mississippi state court (*Brown*). The suit alleged that Jim Walter Homes and some of the Green Tree Parties induced House to sign the sales contract by promising to construct a house in accordance with manufacturer specifications, house plans, and building codes, but that those defendants actually delivered a dwelling that was "substandard, incomplete, defective, and dangerous." Based on these

allegations, House and the other plaintiffs brought claims that included civil conspiracy, breach of contract, negligence, false statements/fraud, and deceit.

The complaint in *Brown* alleged that Jim Walter Homes "sold, assigned, or conveyed" the sales contract and related documents "to Walter Mortgage Company, LLC, then to Walter Investment Management Corp. or one of the Mid State Trust Entities, and ultimately to Wilmington Trust Co., Green Tree [Servicing], and their predecessors, who in turn attempted to sell, assign, or convey said instruments" to the other defendants. This "lending engine," the *Brown* complaint alleged, facilitated the "home built on your lot" scheme in which the Green Tree Parties and Jim Walter Homes acted as conspirators and joint venturers to originate, pool, and securitize mortgages like House's. According to the complaint, "[w]ithout a willingness of [these parties] to purchase such ill-gotten paper, there would be no market or incentive to perpetuate this wrongful scheme." The complaint in *Brown* asserted that each of the Green Tree Parties "aided and abetted each other in each and every act . . . that is the subject of this action" and that each was "liable jointly and severally for the unlawful, deceptive, deceitful and misleading acts and/or omissions of each and every one" of its co-parties. The Green Tree Parties removed *Brown* to federal district court.

While the *Brown* case was pending, the Green Tree Parties filed the present suit and sought to compel arbitration of the House Parties' claims against the Green Tree Parties. The district court granted the motion to compel arbitration, ruling that even though Green Tree Servicing (Green Tree) and the Walter Investment Management Corporation (WIMC) were not signatories to the arbitration agreement, they had standing to enforce it under Mississippi law's intertwined claims test. The court held that, by incorporating the JAMS rules, the parties agreed to delegate questions as to arbitrability to the arbitrator. The district court referenced the version of the JAMS

No. 17-60164

Comprehensive Arbitration Rules and Procedures, effective as of 2014, which provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.[2]

Based on this clause, the district court also held that the House Parties' claims that the sales contract was procedurally and substantively unconscionable must be decided by the arbitrator. The district court remanded the *Brown* case to state court due to lack of diversity jurisdiction.

On appeal, the House Parties contend that (1) under Mississippi law, the intertwined claims test does not apply to Green Tree and WIMC, which did not exist at the time the arbitration agreement was signed; (2) they did not assent to delegate arbitrability and that, in any event, the district court relied on the wrong version of the JAMS rules; and (3) the district court failed to address claims in their pleadings regarding fraud in the inducement.

## II

We first address our jurisdiction. There are three issues: (1) did the district court's "Final Judgment" administratively close the case, (2) in light of this court's precedent,[3] how does the fact that the district court had another case pending before it that involved many of the parties in the present case and similar issues affect the finality of the "Final Judgment" compelling arbitration, and (3) was the notice of appeal premature, and if so, was it nevertheless effective.

---

[2] Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures (2014).

[3] *See Green Tree Servicing, L.L.C. v. Charles*, 872 F.3d 637 (5th Cir. 2017); *CitiFinancial Corp. v. Harrison*, 453 F.3d 245 (5th Cir. 2006).

No. 17-60164

This court has jurisdiction over "a final decision with respect to an arbitration that is subject to this title."[4]  A decision is final if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."[5]  An order compelling arbitration is typically appealable because "once the court compel[s] arbitration, there [is] nothing more for it to do but execute the judgment."[6]  However, when a district court stays or administratively closes a case pending arbitration, the order is not appealable because the "substantive claims have not been dismissed by any district court."[7]

The district court entered upon the record a document captioned "Final Judgment," which provides in its entirety:

> In accordance with the Opinion and Order of the Court by which Plaintiffs' Motion to Compel Arbitration was granted, this case is hereby dismissed with prejudice.  Any party may move to re-open this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrators.

> SO ORDERED this the 6th day of February, 2017.

The Green Tree Parties argue that because the district court permitted any party to move to re-open the case, the judgment was not final for purposes of appeal.

The district court labeled its decision "Final Judgment" and dismissed the case with prejudice.  Although the order recited that either party may move to re-open the case after or during arbitration, this is simply a recognition of rights that the parties may have upon the conclusion of arbitration.  As the Supreme Court has recognized, "[t]he FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment

---

[4] 9 U.S.C. § 16(a)(3).

[5] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (citations omitted).

[6] *Harrison*, 453 F.3d at 249 (citations omitted).

[7] *Id.* at 251.

5

on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding."[8]  The federal district court's order in the present case does nothing more than state the law, and its recognition that post-arbitration proceedings may be initiated is not tantamount to a statement that the court retains jurisdiction of the suit or that it has only administratively closed the case.  Our court concluded in *Green Tree Servicing, L.L.C. v. Charles* that an order virtually identical to the "Final Judgment" in the present case would be a final, appealable order if the court were only examining that order.[9]  Accordingly, the statement in the "Final Judgment" that the parties may return to federal court during or after the arbitration does not affect the finality of the order compelling arbitration.

An unpublished order in *Green Tree Servicing, L.L.C. v. Keyes* does not purport to reach a contrary conclusion.[10]  It considered a district court's order granting arbitration that also stated that the parties could return to district court during or after arbitration.[11]  This court's order in *Keyes* concluded that appellate jurisdiction was lacking.[12]  However, our order reflects that the quorum was under the impression that the district court, after ordering arbitration, had "stayed the remainder of the case, and directed the clerk to administratively close the case."[13]  The order held that the judgment was not final because "[b]y entering a stay and allowing for reactivation of the case, the

---

[8] *Randolph,* 531 U.S. at 86.

[9] 872 F.3d 637, 639 (5th Cir. 2017); *id.* at 638 (reflecting that the district court granted the motion to compel arbitration and that the order also "stated that 'each party may move to re-open this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrators'").

[10] No. 17-60107 (5th Cir. May 31, 2017) (quorum opinion).

[11] *Id.*

[12] *Id.*

[13] *Id.*; *see also id.* ("[I]n addition to compelling arbitration, the district court stayed the rest of the case and ordered it administratively closed.").

district court demonstrated that it was postponing, not terminating, the proceedings."[14] Regardless of how the district court's order in *Keyes* is properly interpreted, the district court in this case did not stay or administratively close the Green Tree Parties' case.

Other issues regarding our jurisdiction remain, however. We must consider other aspects of this court's decision in *Charles*.[15] In *Charles*, as in the present case, another case "involving the same parties and essentially the same dispute" remained pending before the same federal district court when the order compelling arbitration was entered.[16] But unlike the present case, the district court in *Charles* had stayed further proceedings in the related case, and the related case remained pending in the federal district court when we considered the appeal of the order compelling arbitration.[17] We held in *Charles* that the order compelling arbitration was not a final, appealable order and that we therefore lacked jurisdiction.[18] We cited and followed *CitiFinancial Corp. v. Harrison*, in which our court held that when two proceedings with common parties and issues were pending in the same United States District Court, although before two different federal district court judges, and the two judges had respected one another's orders regarding arbitration and a stay, we were obliged to look at the orders from both courts to resolve whether a final, appealable order had been entered.[19] We concluded in *Harrison* that there was no final order.[20] This court reasoned, "[f]unctionally, this case sits in a posture no different than had both orders been issued by a single district court judge."[21]

---

[14] *Id.*

[15] *Green Tree Servicing, L.L.C. v. Charles*, 872 F.3d 637 (5th Cir. 2017).

[16] *Id.* at 638-39.

[17] *Id.*

[18] *Id.* at 639-40.

[19] 453 F.3d 245, 249-52 (5th Cir. 2006).

[20] *Id.* at 251.

[21] *Id.*

Because, in one of the courts, the matter had been "administratively dismissed," which we deemed to be the same as "administratively close[d]" pending arbitration, and the substantive claims of the plaintiffs had not been dismissed, there was no final judgment.[22]

The *Brown* suit, involving some of the same parties and arbitration issue as the present case, remained pending before Judge Barbour when the "Final Judgment" at issue here was entered. Judge Barbour had stayed further proceedings in the *Brown* suit. Although the *Brown* suit was a separate action that had not been consolidated with the present suit, our decisions in *Charles* and *Harrison* compel the conclusion that the "Final Judgment" was not a final, appealable order when it was entered. However, Judge Barbour subsequently remanded the *Brown* case to state court.

The remand of the *Brown* suit places this case in a materially different procedural posture than *Charles* and *Harrison*. The remand of the *Brown* suit left nothing pending before Judge Barbour in either *Brown* or the present case, so the "Final Judgment" became final and appealable.[23] The remand to state court disposed of all remaining issues and parties in the two related actions. The federal district court had ordered arbitration, "the federal action did not contain any substantive claims," and "there was nothing more for it to do."[24]

The fact that Judge Barbour also stayed the state-court litigation pending arbitration when he remanded the *Brown* case to state court does not render the "Final Judgment" non-appealable. The stay of the state-court action was to protect the effectiveness of the federal district court's judgment

---

[22] *Id.* at 251-52.

[23] *See American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 705 (5th Cir. 2002) ("[A]s a matter of law, the district court order compelling arbitration, which also stays the underlying state court proceedings and closes the case in federal court, is an immediately appealable, final decision under the ambit of 9 U.S.C. § 16(a)(3) of the FAA.").

[24] *Harrison*, 453 F.3d at 249 (citations omitted).

compelling arbitration.[25]   A stay by a federal district court of parallel state-court proceedings pending arbitration does not render the federal court's order compelling arbitration non-final or non-appealable.[26]   In the present case, when the remand occurred, nothing remained pending in the federal district court, and the "Final Judgment" became final.

The third jurisdictional issue is whether the notice of appeal in this case is effective.  The House Parties filed a notice of appeal on March 8, 2017, after entry of the "Final Judgment," which occurred on February 6, 2017.  The "Final Judgment" did not become a final, appealable order until the federal district court remanded the *Brown* suit on March 15, 2017.  Accordingly, the notice of appeal was prematurely filed.  We must determine whether that notice is effective, and we conclude that it was.

Our court confronted a similar situation in *Boudreaux v. Swift Transportation Co., Inc.*[27]   The district court granted one party's motion for summary judgment, but another party's summary judgment motion remained pending when the notice of appeal was filed.[28]   The district court granted the pending motion one day after the notice of appeal was filed.[29]   We discussed the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*,[30] and held that the prematurely filed notice of appeal was effective because the order from which the appeal was taken "would have been

---

[25] *See generally Aptim Corp. v. McCall*, 888 F.3d 129 (5th Cir. 2018).

[26] *See American Heritage Life Ins. Co.*, 294 F.3d at 708 ("We hold that where a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is 'final' within the contemplation of § 16(a)(3) of the FAA.").

[27] 402 F.3d 536 (5th Cir. 2005).

[28] *Id.* at 539 and n.1.

[29] *Id.*

[30] 498 U.S. 269 (1991).

appealable if immediately followed by the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b)."[31]  The district court's February 6 "Final Judgment" would have been appealable had it been followed immediately by certification under FRCP 54(b).

An opinion of the District of Columbia Circuit Court of Appeals, authored by then-Judge John Roberts, also analyzes when a prematurely filed notice of appeal is effective,[32] and we commend that opinion to those who wish to plumb the issue more deeply.  It similarly concluded that because the district court's order would have been appealable had the court issued a certification under F.R.C.P 54(b), the order was appealable.[33]

In the present case, we conclude that the premature notice of appeal was effective.[34]

### III

The House Parties contend that Green Tree and WIMC cannot enforce the arbitration agreement because the latter corporate entities are not signatories, and do not come within Mississippi's intertwined claims test because they did not exist at the time the sales agreement was signed. Mississippi law establishes that, as a general rule, a party may not enforce an arbitration provision to which it is not a signatory.[35]  One exception to this rule is the intertwined claims test.[36]  It permits a non-signatory to compel

---

[31] *Boudreaux*, 402 F.3d at 539 n.1 (quoting *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 379 (5th Cir. 1996)).

[32] *Outlaw v. Airtech Air Conditioning & Heating, Inc.*, 412 F.3d 156, 161 (D.C. Cir. 2005); *see also United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998).

[33] *Outlaw*, 412 F.3d at 161-63.

[34] *See Boudreaux*, 402 F.3d at 539 (quoting *Barrett*, 95 F.3d at 379); *see also Swope v. Columbian Chems. Co.*, 281 F.3d 185, 192 (5th Cir. 2002); *In re Seiscom Delta, Inc.*, 857 F.2d 279, 283 (5th Cir. 1988); *Outlaw*, 412 F.3d at 161.

[35] *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1038 (Miss. 2010) (citing *Qualcomm, Inc. v. American Wireless License Grp., LLC*, 980 So. 2d 261, 269 (Miss. 2007)).

[36] *Id.*

arbitration when a litigant makes "allegations of substantially interdependent and concerted misconduct" between a non-signatory and a signatory that have a close legal relationship.[37]  For example, in *Sawyers*, the Supreme Court of Mississippi applied the intertwined claims test to a car-buyer's claims against a car dealership and the underwriter of a GAP insurance policy sold by the dealership.[38]  Even though the underwriter was not a party to the arbitration agreement between the dealer and the buyer, the court allowed it to compel arbitration.[39] The dealer and underwriter had a close legal relationship, the court held, because the underwriter acted on the dealer's behalf by administering the insurance policy and supervising payment of the claim.[40] Because the buyer based its claims against the underwriter on its contract with the dealership, she "[could not] deny [the underwriter] the benefit of the arbitration agreement which was an integral part of the transaction at issue."[41]

The House Parties' allegations support application of the intertwined claims test to permit Green Tree and WIMC to compel arbitration as non-signatories.  First, based on the allegations in the complaint, both entities had a close legal relationship with a signatory to the arbitration agreement.  The House Parties allege that Green Tree, the current servicing agent of the mortgage, or its predecessor, financed the home at a high interest rate and worked with Jim Walter Homes as the "'business end' of a lending engine" scheme that also involved WIMC and the other Green Tree Parties.  These allegations support the conclusion that Green Tree has a close relationship

---

[37] *Id.* (quoting *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005)).

[38] *Id.* at 1028-30.

[39] *Id.* at 1038-39.

[40] *Id.* at 1038.

[41] *Id.* at 1039.

with a signatory because it serviced the mortgage created in the initial transaction between House and Jim Walter Homes.

With respect to WIMC, Green Tree's parent company, the House Parties allege that "without the assistance and cooperation of [WIMC] . . . th[e] fraudulent scheme could not have been possible." The complaint also alleges that "Jim Walter Homes . . . transformed itself into publicly traded, billion dollar entities such as Walter Energy, Inc. and [WIMC]." The complaint alleges that both Green Tree and WIMC were joint venturers and co-conspirators with Jim Walter Homes, the entity that signed the sales contract and other documents. It further alleges that Jim Walter Homes "sold, assigned, or conveyed the contracts, promissory notes, and deeds of trust made the subject of this civil action generally to Walter Mortgage Company, LLC, [now Green Tree] then to WIMC" or other entities. As an alleged assignee/conveyee, co-conspirator, and joint venturer that was integral to perpetuating the harms described in the complaint, WIMC has a close legal relationship with Jim Walter Homes, a signatory.

The complaint alleges that Green Tree and WIMC engaged in "substantially interdependent and concerted misconduct" with Jim Walter Homes. Not only does the complaint assert that Green Tree and WIMC acted as co-conspirators and joint venturers in a scheme to originate and securitize sub-prime loans, it also claims that these entities aided and abetted and are "liable jointly and severally for the unlawful, deceptive, deceitful and misleading acts and/or omissions of each and everyone one" of the other named defendants. Accordingly, Green Tree and WIMC have standing to enforce the arbitration agreement.

The House Parties contend that because Green Tree and WIMC did not exist at the time the sales contract was executed, they are ineligible for the intertwined claims test. The intertwined claims test is not a doctrine of

imputed assent, such that any non-signatory must have existed when the agreement was signed so that House could have anticipated that the entity could later compel arbitration. Rather, the test governs the application of the doctrine of equitable estoppel.[42] Mississippi courts apply the intertwined claims test to estop parties from making claims against non-signatories based on a contract, then seeking to avoid an arbitration provision that "was an integral part of the transaction at issue."[43] In this case, the House Parties allege that Green Tree and WIMC have a close legal relationship with Jim Walter Homes, a signatory to the sales contract, and the House Parties invoked that contract to allege that Green Tree and WIMC engaged in substantially interdependent misconduct with Jim Walter Homes. That Green Tree and WIMC were formed after the sales contract was signed is irrelevant.

## IV

The House Parties also challenge the district court's determination that the parties agreed to delegate the "gateway" question of arbitrability to the arbitrator. Like the broader question of whether a dispute is subject to arbitration, "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."[44] A determination that the parties agreed to arbitrate arbitrability must be supported by evidence showing that the parties "clearly and unmistakably" intended to do so.[45] In such cases, so long as "the assertion of arbitrability" is not "wholly

---

[42] *Id.* at 1038-39.

[43] *Id.*; *see B.C. Rogers Poultry, Inc. v. Wedgeworth,* 911 So. 2d 483, 491 (Miss. 2005).

[44] *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943 (1995) (internal citations omitted)); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014).

[45] *Petrofac,* 687 F.3d at 675 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)).

groundless,"[46] meaning that there is a "plausible argument[] that the dispute was covered by the [arbitration] agreement," the question of arbitration is to be resolved in arbitration.[47]  In *Petrofac*, this court held that by incorporating the American Arbitration Association Rules—which state that arbitrators have power to rule on questions of arbitrability—into their arbitration agreement, the parties had clearly and unmistakably agreed to arbitrate arbitrability.[48]  A number of our sister circuits share this view.[49]

The House Parties contend that, as unsophisticated parties, they could not have assented to delegate arbitrability simply by agreeing to be bound by the JAMS arbitration rules.  The House Parties did not raise this argument before the district court despite extensive argument from the Green Tree Parties that the JAMS rules gave the arbitrator power to determine arbitrability.  Instead, the House Parties argued that because the arbitration agreement was unconscionable and invalid since it had not been properly executed, the delegation provision was invalid by extension.  The House Parties do not renew these arguments on appeal, relying only on their new arguments that they could not have assented to delegation by the incorporation of a set of arbitration rules.  This court generally does not consider arguments raised for the first time on appeal unless the party shows "extraordinary circumstances"—that "the issue . . . is a pure question of law and a miscarriage

---

[46] *Douglas v. Regions Bank*, 757 F.3d 460, 463 (5th Cir. 2014) (quoting *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337 (5th Cir. 2009)); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).

[47] *Douglas*, 757 F.3d at 463.

[48] *Petrofac*, 68 F.3d at 675.

[49] *See, e.g.*, *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm*, 466 F.3d at 1372-73; *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005*)*; *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989).

No. 17-60164

of justice would result from our failure to consider it."[50]  That standard is not met here.  By failing to bring their "assent" theory before the district court, the House Parties forfeited it for purposes of appeal.

The House Parties also argue that the district court erred by considering the JAMS rules effective in 2014, rather than the year the arbitration agreement was signed.  The House Parties forfeited this argument as well by failing to raise it before the district court.  Even though the Green Tree Parties specifically referenced the 2014 version of the JAMS rules in their memorandum brief in support of their motion to compel arbitration, the House Parties did not object to that version of the rules in the proceedings below.  The district court did not err in ruling that the parties' express incorporation of the JAMS rules provides clear evidence that they agreed that the arbitrator would decide arbitrability.

## V

Finally, the House Parties argue that the district court failed to consider their allegations that the Green Tree Parties obtained the arbitration agreement by fraud.  Pursuant to 9 U.S.C § 2, arbitration agreements are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."[51]  Because arbitration agreements are severable as a matter of federal arbitration law, parties seeking to avoid arbitration under § 2 must challenge the validity of the arbitration agreement specifically, rather the contract as a whole.[52]  If the party challenges the "precise agreement to arbitrate at issue, the federal court must consider the challenge" before

---

[50] *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996)).

[51] 9 U.S.C § 2.

[52] *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006)).

15

ordering compliance with a delegation provision.[53]  Even in cases "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract," the Supreme Court "nonetheless require[s] the . . . challenge to be directed specifically to the agreement to arbitrate" as a prerequisite to judicial intervention.[54]

The House Parties' fraud allegations are not specific to the arbitration agreement.  In their pleadings, the House Parties argued generally that the Green Tree Parties "wrongfully obtain[ed] the [House Parties'] signatures on contracts, promissory notes, deeds of trusts, insurance payment plans, and completion certificates" and that "[a]ll the signatures of [House] on the aforementioned documents were generally procured under duress, with deceit, and/or through coercion, trickery, and/or other wrongful conduct."  These blanket allegations of fraud fall well short of the specificity that *Rent-A-Center* requires.  The district court correctly referred the question of fraud to the arbitrator.

\*       \*       \*

We AFFIRM the judgment of the district court.

---

[53] *Id*. at 71.

[54] *Id.*