# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-31035

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2019

Lyle W. Cayce
Clerk

In the Matter of: M B INDUSTRIES, L.L.C.,

      Debtor

----------------------------------

CITY OF SHREVEPORT; BKLC, L.L.C.; STEVEN L. SCHOONOVER; MODULE X SOLUTIONS, L.L.C.,

      Appellants

v.

HALLWOOD FINANCIAL LIMITED; HALLWOOD MODULAR BUILDINGS, L.L.C.,

      Appellees

Appeals from the United States District Court
for the Western District of Louisiana
Nos. 5:15-CV-2533, 5:15-CV-2534, 5:15-CV-2536

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

    Who owns the forty-two cranes housed in a manufacturing facility in

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31035

Shreveport, Louisiana? The bankruptcy court determined that Appellees own two of the cranes and hold valid and enforceable security interests in the other forty, so it granted summary judgment in favor of Appellees. The district court affirmed. For the reasons below, so do we.

## I. Background

In 1962, the City of Shreveport ("the City") leased a manufacturing facility to J.B. Beaird Company ("Beaird").[1] The 1962 Lease states that the City purchased the land and built the facility to keep Beaird from moving its manufacturing operations. It contains the following provisions, many of which are notably favorable to Beaird.

Article II, Acquisition of Site and Erection of Buildings and Related Facilities

- The City agreed to "erect, acquire, construct or install . . . all necessary factory, office and other buildings, equipment, machinery and other personal property necessary for the business activities" of Beaird.

- Beaird could install "any machinery, equipment or fixtures" and "remove, add to, alter, adjust or repair any machinery, equipment or fixtures so installed by it" so long as Beaird didn't interfere "with the progress of the construction of the Manufacturing Facility."

Article IV, Lease: Term and Rental

- The City leased Beaird "[t]he plant, building, or buildings, and other facilities, improvements and structures."

- Beaird owned all "equipment, fixtures, machinery and other personal property of whatever nature placed in, on or about the aforesaid premises and improvements," unless purchased by the City and affixed with an "appropriate tag or other device as being property of [the City]."

---

[1] The company was later known as Beaird Industries, Inc. and Beaird Company, Ltd. We refer to these entities collectively as "Beaird."

No. 18-31035

The City agreed to affix tags promptly.

Article IX: Repairs, Maintenance and Improvements and Equipment Installed by Company

- Any "additions, alterations or improvements, . . . together with all machinery, equipment or tools, or facilities related thereto, . . . placed or installed by" Beaird belonged to Beaird, regardless of "whether or not considered under the laws of the State of Louisiana to be an immovable." The "phrase 'placed or installed by [Beaird]'" included "work done on behalf of Beaird, regardless of who actually performs such work."

- Once the lease expired, Beaird could (1) abandon all such property to the City; (2) sell such property to the City; or (3) remove such property within a reasonable time, provided Beaird left the premises "in like good condition as when received, subject to ordinary wear and depreciation."

Article XV: Removal and Disposal of Property

- Beaird could "remove any machinery, equipment, tools or facilities related thereto, of any nature or kind (whether or not considered under the laws of the State of Louisiana to be an immovable) belonging to" Beaird.

At some point during the lease term, forty-two cranes were installed in the facility, but there is no record of who purchased or installed them. The cranes do not bear any tags or other devices marking them as the City's property.

In 2009, Beaird, still occupying the facility, filed for Chapter 11 bankruptcy relief. Beaird identified each crane as personal movable property in its bankruptcy schedules. Shortly after the bankruptcy converted to a Chapter 7 case, the Beaird bankruptcy trustee sold Beaird's interest in its equipment and machinery to MB Industries ("MBI"), as is evidenced by a court-approved bill of sale that specifically identifies the cranes.

3

No. 18-31035

The 1962 Lease was terminated, and in 2009 the City agreed to lease the facility to MBI. The lease agreement provided that "all personal property in or at the [l]eased [p]remises" is "owned by" MBI "during the Term of this Lease." During the lease term, MBI sold two cranes (the "Bay 14 Cranes") to MBI Leasing, a predecessor to Appellee Hallwood Modular. MBI also executed separate security agreements encumbering all of MBI's equipment and personal property to Hallwood Modular and Hallwood Financial (collectively "Hallwood"). Hallwood alleges that these agreements included the remaining forty cranes.

In 2014, MBI entered into a leasehold mortgage with Steven Schoonover. In 2015, a bankruptcy court authorized MBI to assume and assign its rights under the 2009 Lease to Module X Solutions (along with Schoonover, the "Schoonover Parties").

Schoonover filed suit in state court seeking recognition of his security rights, which he claims cover all forty-two cranes as part of the leased premises. Hallwood removed the case to the bankruptcy court, seeking a declaration against MBI, the City, and the Schoonover Parties that (1) MBI owns 40 cranes, over which Hallwood has a valid first priority security interest and (2) Hallwood owns the two Bay 14 Cranes.

After these two cases were consolidated, Hallwood and the Schoonover Parties filed cross-motions for partial summary judgment regarding (1) the ownership of the cranes and (2) the validity of Hallwood's security interest. The bankruptcy court granted Hallwood's motion, deciding that (1) Beaird, not the City, owned the cranes under the 1962 Lease, (2) MBI acquired the cranes from Beaird, (3) MBI sold the two Bay 14 Cranes to Hallwood, and (4) MBI validly conveyed its security interests in the other forty cranes to Hallwood. The City and the Schoonover Parties separately appealed to the district court, which consolidated their appeals and affirmed. The City and the Schoonover Parties

4

No. 18-31035

then appealed to this court.

## II. Standard of Review

"This court reviews [a] grant of summary judgment de novo, applying the same standard as the lower court." *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 328 (5th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). When "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," then summary judgment should be granted. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). On the other hand, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine issue of material fact exists, and summary judgment should be denied. *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 417 (5th Cir. 2008).

## III. Discussion

Appellants—the City and the Schoonover Parties—contend that the district court erred by affirming the bankruptcy court's grant of summary judgment to Hallwood. Both Appellants argue that the lower courts should have relied on the current Louisiana Civil Code's definitions of "movable" and "immovable" property, not the 1962 Lease, to determine whether the City or Beaird originally owned the cranes. The Schoonover Parties make three additional arguments. First, the City owned the cranes under the terms of the 1962 Lease. Second, even if Beaird owned the cranes, Beaird failed to convey them to MBI. Third, even if Beaird conveyed the cranes to MBI, MBI failed to convey them to Hallwood.

### A.

We must first determine who originally owned the cranes, and we agree with the courts below that the answer begins with the terms of the 1962 Lease.

5

No. 18-31035

The Louisiana Supreme Court long ago instructed that contracts are to be enforced "unless the intent of the parties is wholly unascertainable or is clearly unlawful." *Salles v. Stafford, Derbes & Roy,* 137 So. 62, 63 (La. 1931); *see also Travelers Ins. Co. v. Joseph,* 656 So.2d 1000, 1004 (La. 1995) (noting that the Louisiana Civil Code provides for "the freedom to contract on all matters not forbidden by law"). Appellants do not argue that the 1962 Lease did not create a contract between the City and Beaird, and they do not argue that the intent of either party to the 1962 Lease was unclear or unlawful. In fact, they provide no explanation for why the court should ignore the terms of the 1962 Lease and turn to the current Louisiana Civil Code to determine who originally owned the cranes. As such, we will not ignore the lease terms.

The 1962 Lease states that Beaird owned all "equipment, fixtures, machinery and other personal property of whatever nature placed in, on or about" the facility unless (1) the City purchased the "equipment, fixture[], machinery [or] personal property" and (2) affixed it with an "appropriate tag or other device" denoting the City's ownership. The parties agree that nobody knows who purchased or installed the cranes and that the cranes are not affixed with any tag or other device denoting the City's ownership. Appellants do not argue that the tags might have been removed. Therefore, the only viable argument that the cranes did not belong to Beaird is that they are not "equipment, fixtures, machinery [or] personal property."

Appellants do not dispute the bankruptcy court's finding that the cranes are "machinery," a finding supported by (1) the affidavit of Robert Claybaker, an engineer with experience in the electrical, mechanical, and structural engineering aspects of overhead cranes, describing the mechanics of the

6

overhead cranes and (2) the definition of "machinery" in Webster's Dictionary.[2] Instead, they proffer the curious argument that the phrase "equipment, fixtures, machinery and personal property" only includes personal property, and the cranes are not personal property because they are not movable. This argument is meritless. The provision clearly lists "equipment, fixtures, [and] machinery" in addition to, not as subcategories of, personal property. Moreover, the provision covers both movable and immovable objects: Louisiana law has consistently considered fixtures, also called "component parts," to be immovable. *See Willis-Knighton Med. Ctr. v. Caddo-Shreveport Sales and Use Tax Comm'n,* 903 So.2d 1071, 1073–89 (La. 2015) (describing the history of "classifying component parts"). This determination is also supported by the terms of the 1962 Lease, which acknowledges that equipment, fixtures, and machinery could be movable or immovable in nature and did not enforce different rules for the two types of property.

Therefore, we agree with the bankruptcy court that (1) the cranes are "machinery" and (2) there is no evidence the City tagged the cranes, so the cranes belonged to Beaird under the terms of the 1962 Lease.

**B.**

The Schoonover Parties argue that even if Beaird owned the cranes, Beaird failed to convey the cranes to MBI. During Beaird's bankruptcy proceedings, the Beaird bankruptcy trustee filed a sale motion asking to sell "the Estate's right, title, and interest in, to and upon all of the IM&E [inventory, machinery, and equipment] to MBI." The IM&E included "all the Debtor's movable property." The City was served a copy of the sale motion and

---

[2] The district court appeared to rely on a modern definition of "machinery," but Claybaker's description of the cranes accords with the definitions of "machinery" and "machine" dating back until at least 1828. 2 N. Webster, An American Dictionary of English Language (1828).

did not object. The bill of sale included each crane in the list of applicable property. The Schoonover Parties argue that the cranes are immovable property, so they were not acquired by MBI through the bill of sale.

The district court previously entertained and dismissed this argument, finding that the pertinent question was whether the cranes were movable when Beaird's ownership rights in the cranes vested—not whether they are movable under the law as it stands now. We agree. To apply a different version of the law from that which existed when Beaird's ownership rights in the cranes vested could divest Beaird of its right to transfer, lease, and encumber its property. *Manuel v. La. Sheriff's Risk Mgmt. Fund,* 664 So.2d 81, 84 (La. 1995) (explaining that part of the reason substantive laws are not applied retroactively "is to prevent the impairment of contracts, which is, of course, prohibited by the Constitutions of the United States and of Louisiana"). Therefore, we must determine whether the cranes were considered movable or immovable at the time Beaird's ownership rights vested.[3]

Though the parties don't know precisely when the cranes were installed, they agree that they "were installed early on during the term of the 1962 Lease." Under the Louisiana Civil Code at that time, an object could be immovable in nature or by destination. La. Civ. Code Ann. arts. 463–64 (1860); La. Civ. Code Ann. art. 467 (1912). But under either definition, the object needed to be owned and installed by the same person or entity who owned the building to which the object was attached. *Richardson v. Item Co.,* 134 So. 380,

---

[3] In *U.S. E.P.A. v. New Orleans Public Serv., Inc.*, our court declined to apply the previous version of Louisiana's movable/immovable characterizations. 826 F.2d 361, 365 (5th Cir. 1987). However, this decision was explicitly based on the fact that there were no vested rights at issue. *Id.* at 365 n.5. The court acknowledged that "there may arise a circumstance wherein a vested right would be lost, and such might require a different analysis than that herein employed." *Id.* This is such a circumstance, particularly considering Beaird sold the cranes, pursuant to court-approval and without objection from the City, as movable property.

No. 18-31035

381 (La. 1931). Otherwise, the object's owner remained the owner regardless of how permanently the object became attached to the building. *Id.* Here, the City owned the manufacturing facility while Beaird owned the cranes. Additionally, the 1962 Lease instructs that machinery was installed "by" Beaird when "done on behalf of Beaird," regardless of who actually performed the installation. Since Beaird effectively installed and owned the cranes, the cranes were "movable" when Beaird's property rights vested. Therefore, we agree that Beaird correctly categorized the cranes as movable property and sold them under supervision of the bankruptcy court—and without objection from the City—to MBI.

## C.

Finally, the Schoonover Parties argue that Hallwood failed to acquire the cranes from MBI because neither MBI nor Hallwood properly recorded the transfers at issue. La. Civ. Code Ann. art. 3338. Even assuming the transfers required recordation, the Schoonover Parties do not argue that they instead "acquire[d] valid title" to the cranes. *Camel v. Waller*, 526 So.2d 1086, 1090 (La. 1988). Instead, they argue that "[o]wnership of the [c]ranes remains with the record owner of the buildings to which they are attached—the City of Shreveport." This cannot be correct, for the City never owned the cranes. Therefore, this argument does not sustain a fact dispute about the transfer of the cranes from MBI to Hallwood.

## D.

Accordingly, the judgment below is AFFIRMED. Beaird originally owned the cranes and conveyed them to MBI. MBI then transferred its ownership of and enforceable security interests in the cranes to Hallwood.

9